**STATE of Minnesota, Appellant,**

v.

**Eric James DOKKEN, Respondent.**

No. C0-92-747.

Court of Appeals of Minnesota.

Aug. 18, 1992.

Review Denied Sept. 30, 1992.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James C. Backstrom, Dakota Co. Atty., James M. Crow, Asst. Co. Atty., Hastings, for appellant.

John M. Stuart, State Public Defender, Mark D. Nyvold, Spec. Asst. Public Defender, St. Paul, for respondent.

Considered and decided by HARTEN, P.J., and RANDALL and FOLEY *, JJ.

## OPINION

RANDALL, Judge.

The state appeals a downward dispositional sentencing departure from the pre-

---

* Retired judge of the Court of Appeals, acting by appointment pursuant to Minn. Const. art.

sumptive sentence of 98 months for respondent's first degree criminal sexual conduct conviction. We affirm.

## FACTS

Respondent Eric James Dokken pleaded guilty to one count of first degree criminal sexual conduct and one count of second degree criminal sexual conduct involving two six-year-old boys, in violation of Minn. Stat. §§ 609.342, subd. 1(a), 609.343, subd. 1(a) (1990). As part of a plea agreement, additional charges for incidents allegedly occurring between 1986 and 1989 involving two other victims were dismissed.

The trial court ordered a presumptive stayed 21–month prison sentence for the second degree offense (zero score), and dispositionally departed from the presumptive 98 month prison sentence for the first degree offense (score of 1), ordering a stayed sentence, a year in jail without work release, treatment at the University of Minnesota sex offender program, restitution, and 20 years of probation.

## ISSUE

Did the trial court err by departing downward dispositionally from the sentencing guidelines?

## ANALYSIS

■ A trial court may depart from a presumptive sentence if substantial and compelling circumstances are present. *State v. Best*, 449 N.W.2d 426, 427 (Minn. 1989); *State v. Kindem*, 313 N.W.2d 6, 7 (Minn.1981). A departure is reviewed for abuse of discretion. *State v. Garcia*, 302 N.W.2d 643, 647 (Minn.1981). Furthermore,

[a] trial court sentencing a defendant for criminal sexual conduct may depart dispositionally from the presumptive sentence and place the defendant on proba-

VI, § 2.

tion only if the defendant is particularly amenable to probation or if offense-related mitigating circumstances are present. *State v. Love*, 350 N.W.2d 359, 360 (Minn. 1984).

■ The state argues the trial court's departure was an abuse of discretion because insufficient evidence supports the departure and the sentence is disproportionately lenient. We disagree. Although the case is close, as the trial court acknowledged on the record, the trial court gave detailed permissible reasons for considering a stayed sentence rather than an executed one. The record supports the trial court's conclusion that a downward dispositional departure was reasonable and permissible.

At the sentencing hearing, respondent presented the expert testimony of Dr. Janice Amberson, a consulting psychologist, who endorsed treating respondent in a sex offender program at the University of Minnesota. Dr. Amberson stated that the program does a "particularly good job in dealing with higher functioning people."

She also found the program appropriate for respondent because of its length, averaging two years, and its family treatment component. Dr. Amberson stated that, of those offenders who complete the program, the rate of recidivism after 10 years is less than five percent. The state presented opposing affidavits, but chose not to call any expert witnesses for oral testimony.

The trial court found:

It's a tough decision but I believe there is a chance of rehabilitating [respondent]. I believe there is a good chance of success based upon the testimony I have heard today * * *, as well as a review of the two medical reports.

It is my opinion that [respondent] is amenable to probation supervision, that he is amenable to treatment, and for that reason I am departing from the guidelines.

■ Whether a defendant is amenable to probation depends upon "numerous factors, including age, * * * prior record, remorse, * * * cooperation, * * * attitude while in court, and the support of friends * * * or family." *State v. Carter*, 424 N.W.2d 821, 824 (Minn.App.1988) (quoting *State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982)). Respondent satisfies the *Trog* factors. He is relatively young, now 28, with no prior criminal history. He confessed to the charges and sought counseling prior to pleading guilty. He showed remorse for his crimes, had his parents' full support, and indicated motivation for treatment.

The record is sufficient to support the trial court's decision to dispositionally depart by staying execution of respondent's sentences and placing him on a lengthy and rigid probation to follow the year in jail.

■ The state argues the trial court tended to negate or overlook the seriousness of respondent's crime. We find the opposite is true. It is clear from the record the trial court was fully apprised of the extent and seriousness of respondent's conduct. The trial court knew that if respondent received the presumptive sentence to a state penitentiary, although it would mean more time behind bars, it would also mean respondent might either receive no treatment or, if he chose to take part in a state prison program, could attend without getting involved. A prison inmate serving a standard determinative sentence may not be compelled to take part in a treatment program and, if enrolled in one, cannot have his sentence lengthened if he does not take the program seriously. On the other hand, a defendant who receives a stay of execution of a sentence with a specific condition of probation being meaningful compliance with a treatment program, is required to successfully complete the treatment program. Failure to participate could constitute a probation violation. If the sentencing court finds a probation violation by reason of failure to meaningfully participate in a mandated treatment program, the defendant's stay of execution can be revoked and the presumptive sentence to

prison imposed. *See, e.g., State v. Rock,* 380 N.W.2d 211, 212–13 (Minn.App.1986) (probation revoked and presumptive executed sentence imposed because offender did not enter and complete a treatment program), *pet. for rev. denied* (Minn. Mar. 27, 1986); *State v. Hemmings,* 371 N.W.2d 44, 47 (Minn.App.1985) (probation revoked and presumptive sentence imposed because offender terminated from treatment program).

The trial court correctly determined that greater leverage for treatment was available through strict terms of probation rather than executing a presumptive sentence. Given these circumstances, and giving the deference we must to the trial court's assessment of the weight of the documentary evidence and the expert witness who testified on the subject of respondent's amenability to treatment, we cannot say the trial court abused its discretion by departing dispositionally.

■ The state also argues that Minn. Stat. § 609.342 (1990), by negative implication, mandates a presumptive sentence for first degree criminal sexual conduct because section 609.342, subdivision 3 sets forth requirements for a stay only in cases where a "significant relationship" facilitated criminal sexual conduct. We disagree. The state's argument contradicts Minnesota's code of statutory construction. "Exceptions expressed in a law shall be construed to exclude all others." Minn.Stat. § 645.19 (1990). As a rule, trial courts are permitted to stay imposition or execution of sentences. *See* Minn.Stat. § 609.135 (1990) (court may stay imposition of sentence when practicable); Minn.Sent. Guidelines II.D. (judge may stay presumptive sentence when "substantial and compelling circumstances" are present).

■ Minn.Stat. § 609.342, subd. 3 is an exception to the general rule because it preconditions stays in "significant relationship" cases of first degree criminal sexual conduct. Subdivision 3 is not meant to prevent stays for first degree criminal sexual conduct convictions that are not "significant relationship" convictions.[1]

Trial court authority to impose stay of execution/imposition is the rule, and exceptions are rare. For instance, first degree criminal sexual conduct mandatorily requires a minimum term of imprisonment, but only if a dangerous weapon is involved. *See* Minn.Stat. § 609.11, subds. 4, 5, and 9 (1990). Subsequent convictions for criminal sexual conduct, statutorily mandating a minimum term of imprisonment, contain an exception if the offender is amenable to treatment. *See* Minn.Stat. § 609.346, subd. 2 (1990). Section 609.342, subdivision 3 cannot be given the limited construction sought by the state.

■ The state argues vigorously the sentence was far too lenient for the crime. We agree the case is troublesome—so did the trial court. The nature of the acts and the age of the victims present an important question of balancing tangibles, such as criminal history score, and intangibles, such as the trial court's overall impression of the defendant who stood before him, alongside the issues of due process to victim, defendant, and the administration of justice. But to do what the state asks and reverse a dispositional downward departure and institute a 98 month presumptive sentence is a weighty and grave matter for an intermediate appellate court. We have the authority, *see* Minn.R.Crim.P. 28.05, subd. 2, but the action is drastic. When an appellate court reverses a stay of execution and imposes a presumptive prison sentence, the appellate court is literally reaching down and interjecting itself into the sentencing process. We would be taking a defendant out of a county jail and placing him in a state penitentiary, when the trial judge who personally saw the defendant at sentencing and who heard the plea of guilty, an opportunity an appellate court never has, chose not to imprison.

Affirming a presumptive sentence does not interfere with the sentencing process,

1. There was no significant relationship here and it was not an issue in this case.

but merely states the trial court acted within its discretion. Reversing an upward departure interferes somewhat, but in a mild way, as the appellate court simply finds that, although a sentence is appropriate, the record does not support harshness. But when a reviewing court takes a defendant off probation and places him in a state prison, there is direct and substantial interference with the sentencing process. That power needs to be exercised carefully, and is a power that cannot be used merely because we do not like the trial court sentence.

> This court may have acted otherwise had it been sitting as a sentencing court. As a reviewing court, however, we are loath to interfere in the absence of an abuse of the discretion granted in departing dispositionally from the [sentencing] guidelines.

*State v. Case*, 350 N.W.2d 473, 476 (Minn. App.1984).

Our search for precedent revealed no Minnesota case where a trial court departed dispositionally downward from a presumptive prison term, this court reversed and imposed the presumptive prison term, the defendant sought and received certiorari, and the Minnesota Supreme Court affirmed our reversal. The rare instances where the Minnesota Supreme Court has reversed a presumptive sentence or reversed a trial court's refusal to depart have been on the side of leniency. In *State v. Hennum*, 441 N.W.2d 793 (Minn.1989), the supreme court reversed the trial court's imposition of a presumptive sentence and imposed a downward departure. In *State v. Wall*, 343 N.W.2d 22 (Minn.1984), the supreme court reversed a trial court's decision not to depart downward. The one time the supreme court reviewed a case of ours in the procedural posture that we would find ourselves in if we reversed the trial court here, this court was reversed and the trial court's decision to depart downward upheld. *State v. Mattson*, 376 N.W.2d 413 (Minn.1985) (the trial court imposed a downward durational departure;

the Court of Appeals found to have erred in increasing the sentence to the presumptive sentence duration).

The trial court deliberated long and hard over the appropriate sentence. It coupled jail time with lengthy and rigid terms of probation and cautioned respondent to cooperate with the treatment program and take seriously all terms of his probation. We find no trial court error or abuse of discretion in the sentencing of respondent.

## DECISION

We find no abuse of discretion in departing downward dispositionally, and the trial court's use of a stayed sentence was permissible.

Affirmed.

HARTEN, Judge (concurring specially).

Because of its view from afar, an appellate court is obliged to exercise restraint in reviewing sentencing questions. Determination of weight and credibility of witnesses is the domain of the sentencing court. In this case, judges of both the trial court and appellate court equally disapprove respondent's abhorrent criminal behavior which led to his conviction. It serves no purpose to dwell on the details.

The question on appeal is whether the sentencing court abused its discretion in granting a dispositional departure from the presumptive sentencing guidelines. Whereas I think that the departure is suspect, I must concede that it has evidentiary support.

The corrections officer, whose duty was to investigate exclusively for the court respondent's background and circumstances, concluded that respondent is not amenable to probation. His view is shared by several other professionals. Another professional who examined respondent testified that respondent is amenable to probation. Corrections officers and behavioral scientists, however, do not sentence people. It became the grave responsiblity of the sen-

tencing court to sort out the conflicting recommendations and make a determination. Such determination does not simply rest on mathematical computation of the number of professionals favoring one result or the other; courts regularly instruct juries to disregard the greater number of witnesses in deciding issues.

However inviting, I consider it inappropriate for this appellate court to substitute its distant judgment for that of sentencing court, particularly where, as here, there is evidence to support the sentencing court's discretion. For this reason, I join the majority opinion.

DANIEL F. FOLEY, Judge, dissenting.

I dissent.

The lenient treatment extended to this defendant ignores a stark reality of our times—the sexual abuse of the very young.

It is a conceded fact in the case that the defendant is a pedophile who has preyed upon very young boys over a period of four years—not once, not twice—but repeatedly. This abuse, repeated again and again, included fellatio, repeated sexual contact and instances of the defendant exposing himself to the victims.

There should have been an executed prison term of 98 months. The kind of disposition imposed in this shocking case is hardly meaningful punishment, nor serves as a deterrent to anyone.

I fully understand that a trial court has a certain discretion in sentencing, but I cannot concur in the result reached here. I share the view of the probation officer that the defendant is not amenable to probation, and thus I cannot dismiss the leniency in this case as a proper exercise of the court's discretion. The sentence here is a shocking disregard for the good of the community and should be reversed.

The affidavits of Dr. James Kaul, Director of the Sex Offender Treatment Program at Oak Park Heights, Dr. Nancy Steele and Robin Goldman clearly show the sex offender programs in prison are much more structured than the program at the University of Minnesota, which was selected by the trial court. To quote Dr. Kaul,

The sex offender treatment program at Oak Park Heights is the primary long-term intensive program available to sex offenders in prison. The program is very structured, and involves a full seven hour program each day, including therapy, education and work assignment.

Dr. Chris Johnston of Dakota Mental Health, Inc., diagnosed defendant as a "pedophile with recurrent sexual urges and sexual activity with pre-pubescent children." Dr. Johnston further expressed the view that he was skeptical defendant would do well in long-term treatment based in part on defendant's "obsessive quality to his history of sexual misconduct." Dr. Johnston recommended defendant be involved in as highly a structured sexual offender program as possible.

However, the trial court, because of its reluctance to imprison defendant, chose to follow the recommendation of Dr. Janice Amberson, who was retained by the defense to conduct an evaluation of defendant, and which she did—for 4½ hours—and thus the decision to participate in the program at the University of Minnesota with county jail time and work release. Based on this single evaluation, the trial court determined that defendant is "amenable to probation supervision."

The pedophile is considered amenable to probation supervision and yet consider the comment of Ms. Rita Curn, mother of one of the boys:

Eric Dokken literally put my family through hell. I have had to file bankruptcy. It was over $100,000 in bills, now there is $25,000 more in psychiatric help for [my son] because of his damage.

Consider as well that there are four separate victims that involved separate sexual conduct with young boys over a period of four years.

One of the boys, a six-year-old, was violated by defendant fondling the boy's penis

and having oral sex, and the boy put his penis in defendant's mouth. Consider too that defendant offered another boy a bribe to let him fondle the boy's penis. There is also the sordid conduct with a 12–year–old boy. The defendant admitted that he touched the penis over the clothes; but the boy had alleged much more serious conduct in addition to that, including the violent action of pointing a gun at his head while having anal intercourse and giving him a little white pill that made him tired.

The defendant sought to deny some of these allegations, but after violating these boys over a four-year period, the story of each of the boys has the ring of credibility. The denial of defendant does not.

By no stretch of the imagination can it be seriously asserted that defendant is amenable to supervised probation.

My experience tells me that many criminals, including pedophiles, seem to express remorse for their actions before sentencing and seemingly cooperate with law enforcement personnel, but this should not serve in this case as the basis for granting probation instead of the executed presumptive term. Placing defendant on probation for 20 years is little comfort to these victims. What is needed is the highly structured environment of Oak Park Heights with intense sexual offender therapy. The participation in such a program of therapy would be voluntary, but if defendant is truly remorseful, he would participate. It is the next five to six years that are crucial in defendant's treatment, and not waiting for probation to be vacated in the event of the abuse of another young child.

I reaffirm my strongly held view that the trial court be reversed with directions to impose the presumptive executed term of 96 months.